42 N.J. Super. 7 (1956)
125 A.2d 728
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDMUND FRANKEL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 27, 1956.
Decided October 4, 1956.
*9 Before Judges CONFORD, DAVIDSON and TOMASULO.
Mr. Christian Bollermann argued the cause for plaintiff-respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey, Mr. James T. Kirk, Deputy Attorney-General, and Mr. David M. Satz, Jr., Deputy Attorney-General, attorneys).
Mr. Leopold Frankel argued the cause for defendant-appellant (Messrs. Frankel & Frankel, attorneys).
*10 The opinion of the court was delivered by CONFORD, J.A.D. (temporarily assigned).
This is an appeal from a conviction of the defendant, on trial de novo in the Morris County Court, for violation of N.J.S.A. 39:4-88(a) in that, while driving his automobile on a four-lane highway, he failed to stay in the lane nearest the right-hand side of the highway. The evidence sustaining the conviction was given by a State trooper, who said he followed the defendant on Route 46 in Roxbury Township for 1.1 miles, during which the defendant, driving westerly, continually remained in the inside lane of the two westbound lanes of the highway. Traffic at the time was very light. The defendant testified that he was in that lane for a distance of approximately 600 feet; further, that, at the time, he was looking for a crossroad at which he expected to find, on the other side of the highway, a motor repair shop, to which he was taking his vehicle for repairs. His testimony was, in effect, that while in the inside lane he was expecting momentarily to come upon the left-hand street opening for his destination, although he did not know just where it was.
Defendant raises three principal grounds of appeal: (1) that paragraph (a) of the cited section is unconstitutional in that it fails adequately to apprise the defendant of the manner of operation required in its use of the word, "normally," in the provision:
"A vehicle shall normally be driven in the lane nearest the right-hand edge or curb of the highway when that lane is available for travel, * * *";
(2) that the evidence did not justify his conviction in view of his testimony that he was looking for an opening for a left-hand turn and of the statutory exception, "except when overtaking another vehicle or in preparation for a left turn"; and (3) that in light of N.J.S.A. 39:4-88(d), paragraph (a) was here inapplicable.
1. It is well settled that a penal statute must be couched in language sufficiently definite to apprise the public *11 of the nature of the act prohibited or required to be done. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. State v. New York Central R.R. Co., 37 N.J. Super. 42, 46 (App. Div. 1955). It is, however, common to find regulatory penal statutes or ordinances which are necessarily couched in terms of fairly broad scope because of the peculiar nature of the subject matter in question. In the case cited a municipal ordinance was attacked as unconstitutionally indefinite where it prohibited "loud and unnecessary noise." The court sustained the validity of the ordinance. It cited United States v. Petrillo, 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947), as authority for the rule that "where the legislative regulatory object is appropriate and the conduct intended to be prohibited is not fairly susceptible of definition in other than general language, there is no constitutional impediment to its use." (37 N.J. Super., at pages 47, 48)
As to the statutory provision before us, it would seem fairly clear that the term "normally" was used in the statute in recognition of the general experience that unusual, emergent or otherwise extraordinary situations will arise on a highway, making compliance with a specific statutory direction for motor traffic dangerous, impracticable, or even impossible. For example, if a heavy stream of traffic, occupying both lanes in either direction, were moving on a four-lane highway, it would be impracticable to comply with the literal provisions of the act. The conditions would not be "normal." The requirement for driving in the lane to the right is therefore specified as mandatory only under normal conditions (and where neither of the particular exceptions apply). In our opinion, the nature of the subject matter here under regulation makes the qualification, "normally," appropriate in this connection, and the statute, so couched, is not indictable as failing to afford adequate information to men of common intelligence as to what it is that the statute prohibits. *12 Cf. Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952).
2. The next inquiry is whether the defendant is on sound ground in contending that the evidence required a judgment of acquittal on the basis that it was clearly shown that the defendant was operating his vehicle "in preparation for a left turn." At the outset, it may be noted that the trial court was justified in giving credence to the testimony of the State trooper, rather than that of the defendant, concerning the distance traversed by defendant in the prohibited lane. The trooper stated that he clocked the distance on his speedometer, and he was definite about it. The 600-foot estimate by the defendant is concededly just a guess. Thus, fully crediting the defendant's testimony as to his purpose in occupying the inside lane at the time, it appears that he had only a vague idea as to the location of his intended left-hand turn. The evidence was that it was actually 7/10 of a mile from the point where the defendant was stopped by the trooper to the next crossroad, and thus a distance of 1.8 miles, according to the trooper's testimony, from the point at which the defendant first began to travel on the inside lane to the point at which it was his intention eventually to turn left. In our judgment, an operator of a vehicle who is driving along with no definite knowledge as to the location of a left-hand turn which he intends to make when he arrives there, and who merely expects that he will momentarily come upon it, cannot accurately be said to be preparing for a left turn within the meaning sensibly to be accorded to the statute. The reference, "in preparation for a left turn," intends an entry upon the inside lane at a reasonable distance prior to the point at which the operator knows, not merely guesses, that he is going to reach such a turn. It is common experience that automobile drivers who are looking for a left turn, without specific knowledge of where it is located, will generally be traveling slowly and tentatively, a condition of operation which is extremely dangerous on the inside, or "fast" lane, of a four-lane highway. It represents one of the very types of situation which *13 the legislature was intending to discourage in its direction that vehicles on a clearly marked highway shall normally remain in the right-hand lane.
3. Defendant's attempt to find exculpation in paragraph (d) of the section in question (N.J.S.A. 39:4-88) is not well founded. That provision is to the effect that if the State Highway Commissioner or any local authority duly designates right-hand lanes for slow-moving traffic and inside lanes for traffic moving at a duly designated speed, and the highway is posted to that effect, a vehicle may be driven "in any lane allocated to traffic moving in the direction in which it is proceeding * * *." Defendant contends it is clear from (d) that (a) was not intended to apply to a four-lane highway. We do not agree. First, there is no evidence that any such designation or posting as is mentioned in (d) took place here. In any event, paragraphs (d) and (a) of the section are to be read together as consistent portions of an integral act, and nothing in the former indicates that (a) is not intended ever to be applicable to a four-lane highway.
The defendant also argues that the conviction was the result of mistake, partiality, passion, prejudice or bias. We find nothing in the record to warrant this assertion. Other points of appeal are found to be without merit.
Judgment affirmed.