116 N.J. Super. 353 (1971)
282 A.2d 418
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TRAP ROCK INDUSTRIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1971.
Decided October 15, 1971.
*354 Before Judges LEWIS, KOLOVSKY and HALPERN.
Messrs. Marvin E. Schaefer and Dennis M. Crawford argued the cause for appellant (Messrs. Schaefer & Fitzgerald, attorneys).
Mr. Michael D. Varbalow, designated attorney, argued the cause for respondent (Mr. A. Donald Bigley, Camden County Prosecutor, attorney).
*355 Mr. Jay T. Ahern filed a brief and appeared amicus curiae on behalf of New Jersey Turnpike Authority (Mr. David W. Dowd, attorney).
The opinion of the court was delivered by HALPERN, J.A.D.
Defendant was charged with six separate violations of Regulation 11 of the New Jersey Turnpike Authority and convicted thereon in the Runnemede Municipal Court and at a de novo trial in the Camden County Court. It was fined $15 and costs on each offense by the County Court and it appeals from the judgment of conviction in that court. Regulation 11 provides:

LOOSE CARGO
Commercial vehicles carrying materials not otherwise boxed, crated, bagged or packaged and inclined to spill, must have the load completely covered by a tarpaulin, firmly secured on all sides. [Emphasis supplied]
Defendant seeks to set aside the convictions upon the grounds that (a) it did not violate Regulation 11; (b) Regulation 11 is unconstitutionally vague in failing to provide a proper standard, and (c) Regulation 11 exceeds the scope of the Authority's power given it by N.J.S.A. 27:23-29.
The trial judge could find from the testimony, beyond a reasonable doubt, the following: Defendant owned and operated large tractor-trailers which it used to transport various sized stone and stone dust on the New Jersey Turnpike, at speeds of approximately 60 miles per hour, without the loads being covered by tarpaulins. As a result thereof stones and dust had spilled from trucks similarly loaded and had damaged other vehicles and scattered debris on the Turnpike. The State Police had warned defendant, prior to the day these violations occurred, that such loads should be covered as required by Regulation 11 or it would be prosecuted.
*356 On the day of these violations the trucks were uncovered and loaded with stone and stone dust to points varying from 2 to 18 inches below the top of the sides and tailgates. The trial judge could properly find that while no stones were seen to spill from the six trucks on the day in question, nevertheless since the loads were uncovered they were inclined to spill. To convict for a violation of Regulation 11 it was unnecessary to prove actual spillage. We are satisfied from our review of the record that there was sufficient credible evidence therein to support the trial judge's determination that the loads in question were inclined to spill as proscribed by the Regulation.
Defendant's argument that Regulation 11 is unconstitutionally vague because of insufficient standards is without merit. The purpose of the Regulation is clear  it is intended to prevent spillage from trucks onto a high-speed highway with resulting damage to others on the highway, and littering the highway with debris that might cause accidents. The Authority's expertise in dealing with the condition of the Turnpike's roadbed, weather conditions and other factors must be recognized.
Regulation 11, which is specially geared to regulate loaded trucks travelling on the Turnpike, is akin to a similar prohibition contained in N.J.S.A. 39:4-77 regulating loaded trucks travelling on city streets and other types of highways. The statute provides in part:
No person shall cause or permit a vehicle to be so loaded or operate a vehicle so loaded that the contents or any part thereof may be scattered in any street. * * * [Emphasis supplied]
Here, too, the Legislature saw fit not to require proof of actual spillage in order to convict for such violation. How else could the Authority and the Legislature describe what they proscribed? Their meaning is clear even though couched in general and broad terms due to the nature of the problem. State v. Smith, 46 N.J. 510, 518-519 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 *357 (1967); State v. Frankel, 42 N.J. Super. 7, 11 (App. Div. 1956). The term used in the Regulation, "inclined to spill," and the statutory language, "may be scattered," are words of everyday usage and clearly eliminate the necessity of showing actual spillage. State v. Wasserman, 75 N.J. Super. 480, 491 (App. Div. 1962), aff'd 39 N.J. 516 (1963). Men of ordinary intelligence, and in particular those who are engaged in the operation of trucks with loads having a tendency to spill, do not have to guess at the meaning of "inclined to spill" or differ as to its application. State v. Joas, 34 N.J. 179, 185 (1961). In any event, today "we have attached greater significance to the presence of procedural and judicial safeguards against unreasonable and unwarranted agency action than we have to the presence of details in the statutory standards." Motyka v. McCorkle, 58 N.J. 165, 178 (1971). So viewed, we see no constitutional infirmity in Regulation 11.
Nor is there merit to defendant's contention that Regulation 11 exceeds the scope of the Authority's power under N.J.S.A. 27:23-29. The pertinent part of the statute provides:
The Authority is hereby authorized and empowered to make, adopt and promulgate regulations referred to in this section in accordance with the provisions hereof.
Regulations adopted by the Authority pursuant to the provisions of this section shall insofar as practicable, having due regard to the features of any such turnpike project and the characteristics of traffic thereon, be consistent with the provisions of Title 39 of the Revised Statutes applicable to similar subjects.
Again, it is clear that the Legislature recognized the necessity of having specially promulgated regulations to govern Turnpike traffic because of the nature of the road, and gave the Authority broad powers to regulate its use. We see nothing inconsistent between Regulation 11 and N.J.S.A. 39:4-77; in fact, they seek to eliminate the same evils and complement each other having regard for the roads and highways involved. See State v. Imperatore, 92 N.J. *358 Super. 347, 353-354 (App. Div. 1966), certif. den. 48 N.J. 442 (1967).
Affirmed.