618 P.2d 382

**In the Matter of the Tax Protest of Calvin P. HORN et al.**

**Calvin P. HORN, Appellant,**

v.

**BERNALILLO COUNTY VALUATION PROTESTS BOARD, Appellee.**

**No. 4562.**

Court of Appeals of New Mexico.

Oct. 7, 1980.

Robert H. Clark, Ronald F. Horn, Keleher & McLeod, P. A., Albuquerque, for appellant.

Joe C. Diaz, County Atty., Kenneth A. Hunt, Asst. County Atty., Albuquerque, for appellee.

OPINION

WOOD, Chief Judge.

The owners of the shopping center had no objection to the county assessor's valuation of the improvements; their protest was to the assessor's valuation of the land. We do not reach the question of whether testimony of the value of vacant land is competent evidence as to the value of land on which there are improvements. Another issue, which is dispositive, is whether the County Valuation Protests Board had authority to reject an agreement of the assessor concerning the land value. We hold the Board does not have such authority. Statutory references are to N.M.S.A. 1978.

Section 7–36–2 gives the assessor the responsibility and the authority for valuation of the shopping center. See § 7–38–5. The assessor's valuation is to be in accordance

with the Property Tax Code and regulations of the property tax division of the Taxation and Revenue Department. Sections 7–36–16(A) and 7–35–2(A).

The protest of the land valuation was pursuant to § 7–38–24. This protest was to be heard by the County Valuation Protests Board; the Board's authority was to "hear and decide protests from persons protesting valuations of property . . . made by county assessors and protested under Section 7–38–24 NMSA 1978." Section 7–38–25(D).

Section 7–38–24(D) states:

The assessor may provide for an informal conference after setting a hearing on the protest but before the date of the hearing.

Such a conference was held in this case; at that conference, the property owners and the assessor agreed upon a land valuation lower than the assessor's original valuation.

The assessor is required to comply with regulations of the property tax division. Sections 7–35–3 and 7–35–6. The regulation involved in this case reads:

P.T.D. REGULATION 31.24(D):1—INFORMAL CONFERENCES—

After a protest has been set for hearing, if a taxpayer requests or has requested an informal conference, the assessor may schedule and hold such a conference before the date of the hearing. If an informal conference has not been requested by the taxpayer and the assessor believes an informal conference prior to hearing would be useful, he may schedule such a conference and require the presence of the taxpayer.

\*    \*    \*    \*    \*    \*

Informal conferences may be held at the assessor's office or elsewhere as circumstances require. If, at an informal conference a pending protest is fully resolved with no reduction in the valuation shown on the protesting taxpayer's notice of valuation, the protesting taxpayer must sign a written document, which may be provided by the assessor, stating that the taxpayer withdraws his protest, and the valuation protests board should be notified immediately so that the board may vacate the hearing. . . . If the protest is resolved with the assessor agreeing that the taxpayer's notice of valuation is incorrect, then this settlement must be implemented by presenting to the county valuation protests board a proposed order agreed to in writing by both the assessor and the protesting taxpayer and presenting to the board an explanation of the settlement.

Our concern is with the last sentence of the regulation.

The protest was resolved by the assessor agreeing that the notice of valuation of the land was incorrect.

The protest having been resolved, the settlement was to be implemented. How? By presenting a proposed order to the County Valuation Protests Board and presenting an explanation of the settlement to the Board. This implementation provides a record of, and the reasons for, the settlement.

A representative of the assessor undertook to comply with the provisions for implementing the settlement. An oral explanation was made to the Board as to the settlement and the reasons for the settlement, but the Board afforded no opportunity for presentation of a written order.

At the close of the oral presentation, the chairman of the Board announced "we aren't going to go along with it", that the Board was refusing the stipulation. The chairman stated an evidentiary hearing on the protest would be held and using the stipulation "is useless though because that doesn't mean a thing." A conclusion of law adopted by the Board after the protest hearing was that the stipulation placed an "unreasonably low" valuation on the land on the basis of comparable sales approach.

The Board rejected the stipulation before it heard any evidence. The Board bolstered its rejection by a conclusion concerning the merits of the stipulation on the basis of evidence at a protest hearing which did not involve the stipulation, the chairman having ruled, in advance of taking evidence, that the stipulation had no meaning. We do not consider the due process questions arising

from this procedure because the Board had no authority to reject the stipulation.

The assessor values the property; the assessor did so by an agreement that resolved the protest. The Board's authority is to hear and decide protests. There was no protest to be heard; the protest had been resolved by the assessor's agreement to the lower land valuation. Once the stipulation was reached, the only function of the Board, under the regulation, was to hear the explanation of the settlement and enter the order "agreed to in writing by both the assessor and the protesting taxpayer".

Neither the regulation nor § 7–38–25 authorize the Board to reject the assessor's agreement as to value. This does not mean that there is no check on stipulations by the assessor. The assessor is supervised by the property tax division, § 7–35–3, and may be suspended for failure to comply with the Property Tax Code or regulations or directions of the property tax division. Section 7–35–6.

The order of the Bernalillo County Valuation Protests Board, which refused to change the valuation of the land, is reversed. The cause is remanded with instructions to the property owners and assessor to present the written order reflecting their stipulation to the Board, and with instructions to the Board to enter the agreed upon order and issue directions in conformity therewith.

IT IS SO ORDERED.

LOPEZ, J., concurring.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

I specially concur.

A. *The Protest Board lacks jurisdiction.*

At the opening of the hearing on the protest of Calvin Horn, the chairman of the Protest Board announced that the assessor had a stipulation he would like to present to the Board. The assessor's attorney announced that "the Assessor's Office, as well as the Protestant have agreed to a stipula-

tion to change the value of the land . . . ." He continued:

The reason for the change in the value and the stipulation is that the Assessor and the Protestant agreed to revalue a portion of the land in the back part of this lot from a dollar–and–a–half to a dollar, with the front portion of the lot remaining at a dollar–and–a–half a square foot.

An agreement having been made with the protestant, the protest ended and was no longer in existence. Without a protest, the Board lacked jurisdiction to hold a hearing. Its authority is limited to "hear and decide protests from persons protesting valuation of property for property taxation purposes made by county assessors . . . ." Section 7–38–25(D), N.M.S.A. 1978. Lack of jurisdiction at any stage of the proceedings can be raised by this Court and it is controlling. It must be resolved before going further. *Petition of Kinscherff*, 89 N.M. 669, 556 P.2d 355 (Ct.App.1976).

Having resolved this issue, it is unnecessary to go further, but we are faced with important matters of first impression. Some guidelines must be suggested in accordance with statutory law.

B. *The assessor's change of position was improper.*

After an arbitrary and capricious rejection by the chairman of the stipulation and before the hearing began, Horn's attorney stated:

All right. Just so we'll make our record clear for the Court of Appeals; we're asserting that the Board's acting contrary to the regulations of the Property Tax Department, a violation of due process against this taxpayer.

The hearing began. During the hearing, the assessor, in agreement with Horn as to the valuation of Horn's property for property taxation purposes, became Horn's adversary. One who deserts his principles is often termed a renegade, a turncoat. The assessor became Horn's prosecutor at the hearing and in this appeal.

It was the duty of the assessor to inform the Board that, having agreed with Horn and having fixed a valuation, he could not participate in the hearing to defeat Horn without Horn's consent; that his only participation would be to uphold the dignity of the stipulation; that the agreement was based upon careful negotiations, was fair and reasonable and without favor; that settlement is looked upon with favor to avoid litigation, and that it was his duty as a public official to abide by the sanctity of the agreement.

True, the director of the Property Tax Department has supervising authority in this field over county assessors, § 7–35–3, and the right to suspend the assessors' functions under the Property Tax Code for various violations thereof. Section 7–35–6. In the instant case, the assessor's conduct as suggested would not violate the Code. The county assessor is an elected official whose primary duty is to serve the people, not the Protest Board.

To me, the conduct of the assessor was improper.

C. *Regulation 31–24(D):1 is void.*

P.T.D. Regulation 31–24(D):1 is set forth in Judge Wood's opinion. It provides in pertinent part:

... *If the protest is resolved with the assessor agreeing that the taxpayer's notice of valuation is incorrect,* then this settlement must be implemented by presenting to the county valuation protests board a proposed order agreed to in writing by both the assessor and the protesting taxpayer and presenting to the board an explanation of the settlement. [Emphasis added.]

A dispute has arisen between the Board and taxpayer over the meaning of this portion of the regulation. Its language is so uncertain as to render it void.

A protest cannot be "resolved with the assessor agreeing that the taxpayer's notice of valuation is incorrect." Agree with whom?—The taxpayer? A taxpayer who protests does not admit that his notice of valuation is incorrect. He strongly urges

that it is correct. The assessor does not agree that the taxpayer's notice of valuation is correct. The assessor strongly urges that his valuation is correct. To effect a settlement both parties must compromise their views and arrive at a mutually satisfactory conclusion.

Section 7–38–24(C) and (D) read in pertinent part:

C. Upon receipt of the [protest] petition, the county assessor shall schedule a hearing before the county valuation protests board ....

D. The assessor may provide for an informal conference after setting a hearing on the protest but before the date of hearing.

Perhaps, the regulation was intended to say that if the assessor deems the protestant's notice of valuation to be incorrect, the assessor and taxpayer can sit in an informal conference and attempt to resolve their differences prior to the hearing before the Protest Board. If a settlement is made, then the parties shall present to the Board "a proposed order agreed to in writing," and "an explanation of the settlement." It is impossible to translate or construe the language in the regulation to arrive at this method of settlement.

Regulations of an administrative board must be clear and definite in terms and if such regulations are so vague that men of common intelligence must necessarily guess at their meaning and differ as to their application, they are invalid. *Sanders v. State Department of Public Welfare,* 472 S.W.2d 179 (Tex.Civ.App.1971); *Wilner v. Department of Health,* 5 Misc.2d 331, 159 N.Y.S.2d 601 (1957); *Levier v. State,* 209 Kan. 442, 497 P.2d 265 (1972); *State v. Trap Rock Industries, Inc.* 116 N.J.Super. 353, 282 A.2d 418 (1971); *Ricci v. United States,* 205 Ct.Cl. 637, 507 F.2d 1390 (1974); 73 C.J.S. *Public Administrative Bodies and Procedure,* § 100 (1951).

We have held that administrative regulations may be declared void for uncertainty if their meaning is so uncertain that this Court is unable, by application of known

and accepted rules of construction, to determine what the administrative agency intended with any reasonable degree of certainty. *New Mexico Mun. L., Inc. v. New Mexico Envir. Imp. Bd.*, 88 N.M. 201, 539 P.2d 221 (1975).

The fact that both parties accuse each other of totally misconstruing the meaning of this regulation lends credence to its lack of clarity and definiteness so that "men of common intelligence must necessarily guess at ... [its] meaning and differ as to ... [its] application."

Regulation 31–24(D):1 is void.

### D. *The stipulation is controlling.*

The county assessor was granted authority to value property subject to valuation for taxation purposes. Section 7–36–2, N.M. S.A. 1978. This valuation is presumed to be correct. Section 7–38–6.

The assessor made a valuation. The taxpayer protested. Prior to the hearing before the Protest Board, the assessor and the taxpayer held an informal conference as provided by § 7–38–24(D), *supra*. At the conference, the assessor and taxpayer agreed on the valuation. This, then became the valuation of the assessor and was not only presumed to be correct, it was correct. When the parties agree on the valuation, the protest has ended. It is automatically withdrawn. It is not in existence. The assessor notified the Board that a settlement had been made. There was nothing to hear. As a result, the valuation agreed upon is the valuation for taxation purposes.

The Order of the Protest Board should be reversed and remanded with instructions to set aside its Order and dismiss the proceedings as being inadvert.