DAVID KENDALL, PLAINTIFF-APPELLANT, v. LOUISE KENDALL, TRAILWAYS, INC., AND HERBERT T. HICKS, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 24, 1987—Decided June 8, 1987.

Before Judges BRODY and LONG.

*Burchard V. Martin* argued the cause for appellant (*Martin, Crawshaw & Mayfield,* attorneys; *Burchard V. Martin* on the brief).

*Raymond E. Milavsky* argued the cause for respondent Louise Kendall (*Ballen, Keiser, Gertel, Feldman & Agre,* attorneys; *Arnold H. Feldman* on the letter brief).

*V. Richard Ferreri* argued the cause for respondents Trailways, Inc. and Herbert T. Hicks (*Ferreri & Manos,* attorneys; *V. Richard Ferreri* on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

Plaintiff seeks damages in this negligence action for serious injuries he received in a motor vehicle accident. He was a passenger in an automobile operated by his wife, defendant Louise Kendall, when it collided with a bus owned by defendant Trailways, Inc. and operated by its employee, defendant Herbert Hicks. The jury found that Louise Kendall's negligence was the sole proximate cause of the accident. The effect of the verdict was devastating to plaintiff because his wife was uninsured. By finding that the accident was not also proximately caused by Hick's negligence, the verdict left plaintiff with no recovery. See *Kendall v. Snedeker*, 219 *N.J.Super.* 283 (App.Div.1987).

Superficially the verdict appears unexceptional. The vehicles were travelling in adjoining southbound lanes of a two-lane highway, the Kendall automobile in the left lane and the bus in the right. When Kendall moved to enter the right lane in front of the bus, the bus struck the passenger side of her automobile. However, Kendall did not simply cut off the bus.

The bus was carrying passengers from Pennsylvania to the Atlantic City casinos. After crossing one of the bridges over the Delaware River, the bus entered the left lane of the highway behind the Kendall automobile. Hicks testified that he believed that Kendall was a nervous driver because from time to time for no apparent reason she briefly applied her brakes forcing him to slow down. The Kendalls testified that Hicks was tailgating and Hicks admitted that he was only one or two car lengths behind their automobile moments before the accident. Although a witness testified generally that traffic at the time was moderate, the only other vehicles referred to specifically were three large trucks in the right lane, about a quarter of a mile up the road, that were hauling pieces of steel.

The events leading to the accident began when the three trucks moved in unison to the left lane. That maneuver dislodged a steel plate from the last truck's cargo. The plate, three and a half feet square and a half-inch thick, fell onto the

left lane and tumbled toward the Kendall automobile. As soon as Hicks saw the trucks move into the left lane, he moved his bus into the right lane. He gave two reasons for switching lanes at that time. At one point he testified that it was because with the trucks out of the way he could pass the Kendall automobile on the right. At another point he testified that it was because he anticipated that Kendall would panic and brake her automobile when she saw the plate tumbling towards her. Soon after Hicks moved into the right lane Kendall tried to do the same and cut off the bus.

As a practical matter, the only issue at trial was whether Hicks was negligent to any degree when he either attempted to pass Kendall on the right or failed to slow down so that she would have room to move her automobile into the right lane ahead of the bus if she chose that way to avoid the steel plate. The question is so close that an erroneous instruction relevant to the issue would probably affect the jury verdict. It is therefore likely that the jury found Hicks entirely free of fault because the trial judge erroneously not only refused to instruct them that a statute forbids the driver of a motor vehicle from passing another motor vehicle on the right, but instructed the jury that the statute expressly permitted Hicks to pass the Kendall automobile on the right.

The trial judge refused to permit the jury to consider the following portion of *N.J.S.A.* 39:4–85 when considering whether Hicks was negligent:

> The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the *left* thereof and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle. [Emphasis added.]

He ruled that the foregoing sentence of the statute does not apply to a roadway having more than one lane in the direction of travel because of the next sentence:

> If vehicles on the roadway are moving in two or more substantially continuous lines, the provisions of this paragraph ... shall not be considered as prohibiting the vehicles in one line overtaking and passing the vehicles in another line either upon the right or left....

The judge instructed the jury that the vehicles on the roadway at the time of the accident were in fact "moving in two or more substantially continuous lines" and therefore there was "nothing to prohibit one line from overtaking and passing the vehicles in another line, either on the right or on the left."

▉ There was no evidence that at the time of the accident the bus and Kendall's automobile were each in "substantially continuous lines" of traffic. The only other vehicles on the roadway that were referred to in the testimony were the three trucks that had moved from the right to the left lane a quarter of a mile up the roadway. The judge apparently read "lane" for "line" and interpreted the statute to permit passing on the right whenever a roadway has two or more lanes in the same direction. That is also the view expressed in *State v. Janson*, 205 *N.J.Super.* 606, 609 (Law Div.1985):

> Vehicles are moving in "substantially continuous lines" whenever two or more lanes running in the same direction are open to and used by vehicular traffic, regardless of the extent of the use.

We overrule that interpretation of the statute.

There are sound reasons for the Legislature to require vehicles on a multilane roadway to stay to the right, *N.J.S.A.* 39:4–88 subd. a, and pass only on the left. The rule produces a generally accepted pattern of traffic: as a driver moves into lanes to his left he moves into progressively faster-moving lines of traffic that are passing vehicles to their right. The pattern is maintained only if a driver in a "fast lane" who is not passing vehicles to his right moves back to a slower right lane. Because a driver has a limited view of obstacles to his immediate right, when he moves into a lane to his right he runs the risk of colliding with a vehicle that may be in the process of passing him on the right. Thus the statute prohibits passing on the right in order to ease the safe movement of vehicles back into right lanes where they "normally" belong when not passing vehicles. *See N.J.S.A.* 39:4–88 subd. a; *State v. Frankel*, 42 *N.J.Super.* 7, 11–12 (App.Div.1956).

The actual pattern of traffic depends upon two factors. One is the density of traffic. Ideally when very few vehicles are on a multilane roadway, they are generally driven in the right lane except for the time it takes to pass a slower-moving vehicle. As traffic becomes more dense, vehicles tend to stay longer in left lanes because they are more frequently passing slower-moving vehicles. At some point, however, traffic can become so dense that there is no room for vehicles to move into left lanes to pass or move back to right lanes after passing. The statute describes the lines of traffic in each lane when that point has been reached as "substantially continuous lines" and permits the vehicles in one line to overtake and pass the vehicles in another line "either upon the right or left" because the normal traffic pattern has been broken. Whether at a particular time the traffic has become so dense that lines of traffic have become "substantially continuous" is an issue of fact. Until that condition has occurred, the statute requires a driver to pass only on the left.

▇ There was no need here to have the jury determine whether substantially continuous lines of traffic had formed on the roadway so as to permit the bus to pass Kendall's automobile on the right because there was no evidence that the traffic was that dense. The trial judge should therefore have instructed the jury that the statute required the bus to pass on the left and that if they should find that Hicks was trying to pass the Kendall automobile on the right, they may consider that violation of the statute as evidence of negligence. *Phillips v. Scrimente*, 66 *N.J.Super.* 157 (App.Div.1961).

The other factor, not expressly presented here, that upsets the normal pattern of traffic is the presence of a slow-moving vehicle in a left lane. *N.J.S.A.* 39:4–88 subd. a provides:

A vehicle shall normally be driven in the lane nearest the right-hand edge or curb of the roadway when that lane is available for traffic, except when overtaking another vehicle or in preparation for a left turn.

This provision and *N.J.S.A.* 39:4–85, requiring that a vehicle pass on the left, are the basis for the familiar signs on our

multilane highways: "KEEP RIGHT/PASS LEFT." A slow-moving vehicle in a left lane not only violates the "keep right" statute, but also *N.J.S.A.* 39:4–97.1, which provides:

> No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with the law.

The Traffic Act deals with the high density factor by expressly permitting a vehicle to pass on the right a substantially continuous line of traffic, but does not expressly permit a vehicle to pass on the right a slow-moving vehicle that is unlawfully in a left lane. If that problem had been presented to the trial judge in this case, the proper charge would have been that the bus driver's violation of the Traffic Act was not negligence *per se* but should be considered with all other evidence in determining whether he was negligent. In judging whether a party was negligent, the trier of fact may conclude that in the circumstances it was reasonable for the party to have violated the Traffic Act. As the Court said in *Jackson v. Geiger*, 100 *N.J.L.* 330, 333 (E. & A. 1924):

> And, again, in *Winch v. Johnson*, 92 *N.J.L.* 219, Mr. Justice Minturn, speaking for this court, in discussing the purpose of the Traffic act (at *p.* 220), says: "The manifest purpose of the legislation being the avoidance of danger and collision upon the highway, its application in any instance must co-ordinate with the rule of reason, which at common law vests an exercise of discretion for care and foresight in the wayfarer, consistent with the exercise of a like discretion in others in the lawful use of the highway."

Reversed and remanded for a new trial.