STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT.

v.

DAVID J. LEVINSON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 10, 1988—Decided May 19, 1988.

Before Judges KING, GAULKIN and D'ANNUNZIO.

*Arthur H. Miller* argued the cause for appellant (*Miller & Littman,* attorneys; *Arthur H. Miller,* on the brief).

*Simon Louis Rosenbach,* Assistant Prosecutor, argued the cause for respondent (*Alan A. Rockoff,* Middlesex County Prosecutor, attorney; *Simon Louis Rosenbach,* on the brief).

*Herbert I. Olarsch* filed a brief *amicus curiae* on behalf of the New Jersey Turnpike Authority (*Mary–Elizabeth Garrity,* on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The issue is the validity of a regulation banning photography on the New Jersey Turnpike. Defendant's municipal court conviction for taking photographs on the New Jersey Turnpike was upheld in the Law Division. Defendant appeals, and we now reverse.

Defendant, a Virginia resident, was traveling on the New Jersey Turnpike with his wife on August 8, 1986 when he witnessed a collision between a state police car and two other vehicles. According to defendant and his witnesses at the municipal court trial, the police vehicle was being operated in reverse at an excessive speed on the left shoulder of the southbound lanes when it spun out of control and veered into the southbound lanes causing the collision.

After offering assistance to the persons involved in the collision, defendant, an associate professor of photography at a Virginia community college, began taking photographs of the scene. Defendant testified that he took the photographs to make a record in the event of a police coverup of the cause of the collision.[1]

Trooper Fleming and his superior, Sergeant Miele, observed defendant using his camera and ordered him to stop taking pictures. Defendant testified that he took five pictures, the last one being of Fleming and Miele pointing at him, but that he took no more photos after he was told to stop. Fleming testified that defendant continued to photograph after he was told to stop. Fleming approached defendant, informed him that

---

[1]Apparently defendant's concern that the police would be biased in their investigation of the incident was prompted by an exchange between defendant and Trooper Fleming, an investigating trooper. When defendant suggested to Trooper Fleming that a trooper had caused the collision, Trooper Fleming suggested that it was due to the excessive speed of one of the other vehicles as evidenced by 250 feet of skidmarks. It was then that defendant, who testified that he saw no skidmarks, got his camera and began to photograph the scene. This exchange was corroborated by a witness called in defendant's behalf. It was not refuted by Trooper Fleming at the municipal court trial.

it was against Turnpike regulations to take photos, that he was under arrest and that defendant would have to give the film to him. Defendant, expressing disbelief that he was being arrested for taking pictures, removed the film from the camera. However, before giving it to Fleming, defendant demanded a receipt and apparently refused to relinquish the film without a receipt. During a struggle to place handcuffs on defendant, the film came into the possession of Ronald Speicher, one of the persons involved in the collision. Speicher retained the film, had it processed and presented the photos to the municipal court at defendant's trial.

Defendant was charged with taking photos on the Turnpike in violation of *N.J.A.C.* 19:9–1.6(k) and walking on the Turnpike in violation of *N.J.A.C.* 19:9–1.9(a)(1). Defendant was also charged with obstructing an officer and resisting arrest in violation of *N.J.S.A.* 2C:29–1 and 2. He was found not guilty in the municipal court of all charges except the photographing charge.

The regulation in issue states:

No person shall be permitted to take photographs or motion pictures on the New Jersey Turnpike except as authorized by the authority.

*N.J.A.C.* 19:9–1.1 defines the New Jersey Turnpike as including "entrance plazas ... toll houses, service areas, service stations, service facilities ... and administration, storage and other buildings...."

On this appeal, defendant contends that the regulation is arbitrary, that it exceeds the authority granted by the legislature and that it is vague, overbroad and unconstitutional. The latter argument is based on the premise that the act of photographing is a constitutionally protected activity.

The New Jersey Turnpike Authority (Authority) was created by the legislature. *N.J.S.A.* 27:23–1 to 40. The Authority's powers consist of expressly granted powers and incidental powers reasonably necessary to effectuate the Authority's purpose and objective. The grant of power is to be

liberally construed to enable the agency to fulfill its statutory responsibility. To determine whether an act of the Authority is statutorily authorized, we may look beyond the language of the enabling act to the statutory objective. The Authority's regulations are afforded a rebuttable presumption of validity. *See A.A. Mastrangelo, Inc. v. Environmental Protection Department,* 90 *N.J.* 666 (1982); *N.J. Guild Hearing Aid Dispensers v. Long,* 75 *N.J.* 544 (1978); *Cammarata v. Essex County Park Commission,* 26 *N.J.* 404 (1958); *D.S. v. East Brunswick Tp. Bd. of Ed.,* 188 *N.J.Super.* 592 (App.Div.1983), certif. den. 94 *N.J.* 529 (1983).

But the court has a "responsibility to restrain agency action 'where there exists reasonable doubt as to whether such power is vested in the administrative body....'" *In re Jamesburg High School Closing,* 83 *N.J.* 540, 549 (1980). Where such doubt exists, and where the enabling legislation cannot fairly be said to authorize the agency action in question, the power is denied." *A.A. Mastrangelo, Inc., supra* 90 *N.J.* at 684.

*N.J.S.A.* 27:23–29 empowers the authority to adopt regulations. It provides in pertinent part:

All persons operating vehicles upon any such turnpike project, or seeking to do so, must at all times comply with regulations, not inconsistent with the other sections of this act, adopted by the New Jersey Turnpike Authority concerning types, weights and sizes of vehicles permitted to use any such turnpike project, and with regulations adopted by the Authority for or prohibiting the parking of vehicles, concerning the making of turns and the use of particular traffic lanes, together with any and all other regulations adopted by the Authority to control traffic and prohibit acts hazardous in their nature or tending to impede or block the normal and reasonable flow of traffic upon any turnpike project; provided, however, that prior to the adoption of any regulation for the control of traffic on any such turnpike project, including the designation of any speed limits, the Authority shall investigate and consider the need for and desirability of such regulation for the safety of persons and property, and the contribution which any such regulation would make toward the efficient and safe handling of traffic and use of such turnpike project, and shall determine that such regulation is necessary or desirable to accompany such purposes or one or some of them, and that upon or prior to the effective date of any such regulation and during its continuance, notice thereof shall be given to the drivers of vehicles by appropriate signs erected at the roadside or otherwise posted.

> The Authority is hereby authorized and empowered to make, adopt and promulgate regulations referred to in this section in accordance with the provisions hereof. Regulations adopted by the Authority pursuant to the provisions of this section shall insofar as practicable, having due regard to the features of any such turnpike project and the characteristics of traffic thereon, be consistent with the provisions of Title 39 of the Revised Statutes applicable to similar subjects.

Traffic flow, traffic control and safety are the objectives of *N.J.S.A.* 27:23–29 and regulations adopted thereunder. The State, in its brief, agrees that *N.J.S.A.* 27:23–29 authorizes regulations to promote traffic control and safety. It contends that the regulation does not ban all photography, merely photography that interferes with traffic control and safety. The State further contends that defendant's conviction must be affirmed because defendant's actions were hazardous and threatened the flow of traffic.

The Authority, in its *amicus* brief and at oral argument, contends that *all* photography is prohibited unless authorized by the Authority.

The Authority has adopted comprehensive regulations to promote traffic flow and safety. *N.J.A.C.* 19:9–1.1 *et seq.* These regulations control speed and also prohibit activities with a clear potential to impede traffic, impair safety and damage authority facilities such as U-turns, use of the medial strip, parking, stopping and standing except in case of emergency and the use of the Turnpike by pedestrians. *See State v. Trap Rock Industries, Inc.*, 116 *N.J.Super.* 353 (App.Div.1971) (enforced regulation that loose cargo be covered by firmly secured tarpaulin); *State v. Imperatore*, 92 *N.J.Super.* 347 (App.Div. 1966) (enforced reduced speed limits in construction areas and delegation of power to establish those limits).

Prohibiting a motorist from taking a photograph of his disabled or damaged vehicle on a shoulder of the road or from taking a photograph in a service area does not contribute to the objectives of traffic flow and safety. Using a camera to expose film to light is not hazardous per se. The manner in which it is done may be hazardous, such as taking a photograph while

standing in one of the traveled lanes. But the hazard results from the location of the photographer not from the fact that he is taking a picture. Standing in a traveled lane may be expressly prohibited by regulation. Parking, stopping and standing are prohibited except in emergencies. *N.J.A.C.* 19:9-1.-6(a)(b)(c)(d). A motorist who parks on a shoulder, in a non-emergency context, for the purpose of taking a photograph violates the no parking regulation because he has parked illegally but not because he is photographing the scene. *Cf. N.J.A.C.* 19-9-9-1.6(h), which specifically prohibits the parking, stopping or standing of any vehicle for the purpose of selling food or other goods or as part of a demonstration or to take on or discharge passengers. If photography poses special risks to traffic flow and safety those risks should be defined and incorporated in regulations designed to protect traffic security.

■ We conclude that the regulation establishing a blanket ban against all photography regardless of circumstances or context exceeds the powers delegated to the Authority by the enabling act.

■ As previously indicated, the State urges us to affirm the conviction by limiting the breadth of the photography regulation to cases in which traffic is impeded or safety is compromised. We conclude that it is inappropriate for us to judicially amend the regulation by adding the proposed limiting language, especially where the promulgating agency has stated that it intended to ban *all* photography. *See Property Owners Assn. of N. Bergen v. Tp. of N. Bergen,* 74 *N.J.* 327 (1977).

> The judiciary should not exercise a discretion entrusted to the legislative body. Gaps in an ordinance may be filled when the legislative intent is clear and judicial construction will *further* the legislative goal. *See, e.g., Camarco v. City of Orange,* 61 *N.J.* 463 (1972). But where the path is not clear, then the courts should refrain from usurping the legislative function. *Orvil v. Woodcliff,* 61 *N.J.L.* 107, 111–112 (Sup.Ct.1897); 2A *Sutherland Statutory Construction,* § 47.38, at 172–173 (4th ed. 1973). [*Id.* at 338 (emphasis added).]

*Cf. International Brotherhood of Elec. Workers v. Gillen,* 174 *N.J.Super.* 326, 329 (App.Div.1980) (courts required to enforce the intent as written).[2]

Reversal of defendant's conviction on the ground stated makes it unnecessary for us to consider whether and the extent to which the taking of photographs by a private citizen is protected by the United States and New Jersey Constitutions. *See Commonwealth v. Oakes,* 401 *Mass.* 602, 518 *N.E.*2d 836 (Sup.Jud.Ct.1988) (the "expressive process" of taking a picture is protected by the First Amendment).

Reversed.

---

[2]We also observe that the evidence would not support a finding beyond a reasonable doubt that defendant's actions constituted a hazard or impeded traffic flow.